# EXHIBIT B

| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| | SUPERIOR COURT DIVISION |
| COUNTY OF DURHAM | 20 CVS 2922 |

| KENITA UPCHURCH, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANTS UNITED PROPERTY** |
| v. | ) | **MANAGEMENT LLC AND SAVANNAH** |
| | ) | **PLACE APARTMENTS LLC d/b/a** |
| UNITED PROPERTY MANAGEMENT | ) | **SAVANNAH PLACE APARTMENTS'** |
| LLC and SAVANNAH PLACE | ) | **MOTION TO DISMISS AND/OR** |
| APARTMENTS LLC d/b/a SAVANNAH | ) | **MOTION FOR JUDGMENT ON THE** |
| PLACE APARTMENTS, | ) | **PLEADINGS** |
| | ) | |
| Defendants. | ) | |

NOW COME Defendants United Property Management LLC and Savannah Place Apartments LLC d/b/a Savannah Place Apartments (together "Defendants"), by and through counsel, and hereby renew and reassert their Motion to Dismiss pursuant to Rule 12(b)(6) and Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure.[1] In support of these Motions, Defendants set forth as follows:

1. Plaintiff Kenita Upchurch was a former tenant of Savannah Place Apartments LLC.

2. Plaintiff filed her Complaint on August 6, 2020, alleging violations of the North Carolina Residential Rental Agreements Act, N.C. Gen. Stat. § 42-46, and the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50, Negligence, and Negligent Misrepresentation on behalf of herself and certain proposed classes.

3. The basis of all of Plaintiff's claims is her assertion that when Defendants filed certain eviction complaints against Plaintiff after she was delinquent in paying rent, Defendants

---

[1] Defendants set forth a Motion to Dismiss and Motion for Judgment on the Pleadings in their Answer filed October 27, 2020.

charged unauthorized fees such as filing fees, service fees, and attorneys' fees (together "Eviction Fees") to her.

4. Defendants contend such Eviction Fees were allowed to be charged under N.C. Gen. Stat. § 42-46. Plaintiff contends Eviction Fees were not allowed to be charged until N.C. Gen. Stat. § 42-46 was amended in 2018 and further contends the 2018 amendment only applied prospectively and not retroactively. In an unpublished opinion in a similar case regarding Eviction Fees, the Fourth Circuit, interpreting and applying North Carolina law, agreed with Plaintiff's position. *Suarez v. Camden Property Trust*, 818 Fed. App'x 204 (4th Cir. 2020).[2]

5. On July 2, 2021, Senate Bill 644 was signed into law, Session Law 2021-71, after passing both houses of the North Carolina legislature unanimously. (The legislation is attached as Exhibit A).

6. Senate Bill 644 is entitled, "An Act to Clarify and Reaffirm the Statutory Authority of Landlords to Recover Out-of-Pocket Expenses and Litigation Costs in Summary Ejectment Proceedings and to Make Various Changes to the Landlord/Tenant Statutes." *See* 2021 N.C. Sess. L. 71, S.B. 644.

7. This bill states it "is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date. The amendments contained in this Part are intended to be clarifying of the General Assembly's intent under previous amendments to this statute." *Id.* Senate Bill 644 also states that it applies to all pending matters. *Id.*

8. To the extent it was unclear whether Defendants were allowed to charge the Eviction Fees prior to 2018, the General Assembly has decisively clarified the issue.

---

[2] No North Carolina appellate court has reviewed this issue.

9. Because the conduct alleged by Plaintiff to be wrongful has always been lawful and permissible, all of Plaintiff's claims fail. Therefore, all of Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted, or, in the alternative, judgment on the pleadings should be granted in favor of Defendants as to Plaintiff's claims against Defendants.

10. In a similar case brought by the same attorneys against a different apartment complex regarding Eviction Fees under the same theories of liability, a federal court has recently granted a motion for judgment on the pleadings in favor of defendants due to Session Law 2021-71 as the court found the new law was meant by the North Carolina legislature to apply retroactively and was allowed to apply retroactively. *Bass v. Weinstein Management Col, Inc.*, 2021 WL 4078507 (Sept. 8, 2021, WDNC) (Judge Eagles) (appeal filed Oct. 6, 2021) (this opinion is attached to as Exhibit B).

11. Defendants will file a separate memorandum of support prior to the hearing.

Respectfully submitted this the 25th day of October 2021.

/s/ John M. Nunnally
JOHN M. NUNNALLY
NC Bar No. 19203
ASHLEY H. CAMPBELL
NC Bar No. 31597
AMIE C. SIVON
NC Bar No. 34206
**RAGSDALE LIGGETT PLLC**
2840 Plaza Place, Suite 400
Raleigh, NC 27612
Telephone: (919) 787-5200
Facsimile: (919) 783-8991
Email: jnunnally@rl-law.com
Email: acampbell@rl-law.com
Email: asivon@rl-law.com
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 25th day of October 2021, a true and accurate copy of the foregoing **DEFENDANTS UNITED PROPERTY MANAGEMENT LLC AND SAVANNAH PLACE APARTMENTS LLC d/b/a SAVANNAH PLACE APARTMENTS' MOTION TO DISMISS AND/OR MOTION FOR JUDGMENT ON THE PLEADINGS** has been duly served via electronic mail and United States Mail to the following counsel of record:

Scott C. Harris, Esq.
Patrick M. Wallace, Esq.
Milberg Coleman Bryson Phillips Grossman, PLLC
900 West Morgan Street
Raleigh, NC 27603
Email: sharris@milberg.com
Email: pwallace@milberg.com

Edward H. Maginnis, Esq.
Karl S. Gwaltney, Esq.
MAGINNIS HOWARD PLLC
7706 Six Forks Road, Suite 101
Raleigh, NC 27615
Email: emaginnis@maginnishoward.com
Email: kgwaltney@maginnishoward.com

*Counsel for Plaintiff and the proposed Classes*

/s/ John M. Nunnally
JOHN M. NUNNALLY
NC Bar No. 19203
ASHLEY H. CAMPBELL
NC Bar No. 31597
AMIE C. SIVON
NC Bar No. 34206
**RAGSDALE LIGGETT PLLC**
2840 Plaza Place, Suite 400
Raleigh, NC 27612
Telephone: (919) 787-5200
Facsimile: (919) 783-8991
Email: jnunnally@rl-law.com
Email: acampbell@rl-law.com
Email: asivon@rl-law.com
*Counsel for Defendants*

4

4866-9079-1168, v. 1

Case 1:20-cv-01049-WO-JLW   Document 51-2   Filed 12/28/21   Page 5 of 14

GENERAL ASSEMBLY OF NORTH CAROLINA
SESSION 2021

SESSION LAW 2021-71
SENATE BILL 644

AN ACT TO CLARIFY AND REAFFIRM THE STATUTORY AUTHORITY OF LANDLORDS TO RECOVER OUT-OF-POCKET EXPENSES AND LITIGATION COSTS IN SUMMARY EJECTMENT PROCEEDINGS AND TO MAKE VARIOUS CHANGES TO THE LANDLORD/TENANT STATUTES.

The General Assembly of North Carolina enacts:

PART I. CLARIFICATION AND REAFFIRMATION OF RECOVERY OF OUT-OF-POCKET EXPENSES AND LITIGATION COSTS IN SUMMARY EJECTMENTS
  SECTION 1.1. G.S. 42-46 reads as rewritten:
"§ 42-46. Authorized ~~late fees and eviction fees.~~ fees, costs, and expenses.
  (a)  Late Fee. – In all residential rental agreements in which a definite time for the payment of the rent is fixed, the parties may agree to a late fee not inconsistent with the provisions of this subsection, to be chargeable only if any rental payment is five days or more late. If the rent:
    (1)  Is due in monthly installments, a landlord may charge a late fee not to exceed fifteen dollars ($15.00) or five percent (5%) of the monthly rent, whichever is greater.
    (2)  Is due in weekly installments, a landlord may charge a late fee not to exceed four dollars ($4.00) or five percent (5%) of the weekly rent, whichever is greater.
    (3)  Repealed by Session Laws 2009-279, s. 4, effective October 1, 2009, and applicable to leases entered into on or after that date.
  (b)  A late fee under subsection (a) of this section may be imposed only one time for each late rental payment. A late fee for a specific late rental payment may not be deducted from a subsequent rental payment so as to cause the subsequent rental payment to be in default.
  (c)  Repealed by Session Laws 2009-279, s. 4, effective October 1, 2009, and applicable to leases entered into on or after that date.
  (d)  A lessor shall not charge a late fee to a lessee pursuant to subsection (a) of this section because of the lessee's failure to pay for water or sewer services provided pursuant to G.S. 62-110(g).
  (e)  Complaint-Filing Fee. – Pursuant to a written lease, a landlord may charge ~~a~~ an administrative complaint-filing fee not to exceed fifteen dollars ($15.00) or five percent (5%) of the monthly rent, whichever is greater, only if the tenant was in default of the lease, the landlord filed and served a complaint for summary ejectment and/or money owed, the tenant cured the default or claim, and the landlord dismissed the complaint prior to judgment. The landlord can include this fee in the amount required to cure the default.
  (f)  Court-Appearance Fee. – Pursuant to a written lease, a landlord may charge ~~a~~ an administrative court-appearance fee in an amount equal to ten percent (10%) of the monthly rent only if the tenant was in default of the lease and the landlord filed, served, and prosecuted successfully a complaint for summary ejectment and/or monies owed in the small claims court.


If the tenant appeals the judgment of the magistrate, and the magistrate's judgment is vacated, any fee awarded by a magistrate to the landlord under this subsection shall be vacated.

(g) Second Trial Fee. – Pursuant to a written lease, a landlord may charge a second administrative trial fee for a new trial following an appeal from the judgment of a magistrate. To qualify for the fee, the landlord must prove that the tenant was in default of the lease and the landlord prevailed. The landlord's fee may not exceed twelve percent (12%) of the monthly rent in the lease.

(h) Limitations on Charging and Collection of ~~Fees.~~ Administrative Fees and Out-of-Pocket Expenses and Litigation Costs.

(1) A landlord who claims administrative fees under subsections (e) through (g) of this section is entitled to charge and retain only one of the above fees for the landlord's complaint for summary ejectment and/or money owed.

(2) A landlord who earns ~~a~~ an administrative fee under subsections (e) through (g) of this section may not deduct payment of that fee from a tenant's subsequent rent payment or declare a failure to pay the fee as a default of the lease for a subsequent summary ejectment action.

(3) It is contrary to public policy for a landlord to put in a lease or claim any administrative fee for filing a complaint for summary ejectment and/or money owed other than the ones expressly authorized by subsections (e) through (g) ~~[and] (i)~~ of this ~~section, and a reasonable attorney's fee as allowed by law.~~ section. This limitation does not apply to out-of-pocket expenses or litigation costs.

(3a) It is contrary to public policy for a landlord to claim, or for a lease to provide for the payment of, any out-of-pocket expenses or litigation costs for filing a complaint for summary ejectment and/or money owed other than those expressly authorized under subsection (i) of this section.

(4) Any provision of a residential rental agreement contrary to the provisions of this section is against the public policy of this State and therefore void and unenforceable.

(5) If the rent is subsidized by the United States Department of Housing and Urban Development, by the United States Department of Agriculture, by a State agency, by a public housing authority, or by a local government, any fee charged pursuant to this section shall be calculated on the tenant's share of the contract rent only, and the rent subsidy shall not be included.

(i) Out-of-Pocket ~~Expenses.~~ Expenses and Litigation Costs. – In addition to the late fees referenced in subsections (a) and (b) of this section and the administrative fees of a landlord referenced in subsections (e) through (g) of this section, a landlord ~~is also~~ also is permitted to charge and recover from a tenant the following actual out-of-pocket expenses:

(1) Filing fees charged by the court.

(2) Costs for service of process pursuant to G.S. 1A-1, Rule 4 of the North Carolina Rules of Civil Procedure and G.S. 42-29.

(3) Reasonable attorneys' fees actually ~~incurred,~~ paid or owed, pursuant to a written lease, not to exceed fifteen percent (15%) of the amount owed by the tenant, or fifteen percent (15%) of the monthly rent stated in the lease if the eviction is based on a default other than the nonpayment of rent.

(j) The out-of-pocket expenses and litigation costs listed in subsection (i) of this section are allowed to be included by the landlord in the amount required to cure a default.

(k) As used in this section, the term "administrative fees" does not include out-of-pocket expenses, litigation costs, or other fees."

**SECTION 1.2.** This Part is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date. The amendments contained in this Part

Case 1:20-cv-01049-WO-JLW   Document 51-2   Filed 12/28/21   Page 7 of 14

are intended to be clarifying of the General Assembly's intent under previous amendments to this statute.

**PART II. VARIOUS CHANGES TO LANDLORD/TENANT STATUTES**
  **SECTION 2.1.** Article 1 of Chapter 42 of the General Statutes is amended by adding a new section to read:
"**§ 42-14.5. Foreseeability not created by criminal record; no duty to screen.**
  Notwithstanding any other duty or obligation which may be defined by this Chapter or otherwise provided by law or any theory of liability, the criminal record of any prospective or current residential lessee, occupant, or guest shall not make any future injury or damage arising from that residential lessee, occupant, or guest foreseeable by the residential lessor or residential lessor's agent, nor shall a residential lessor or a residential lessor's agent have a duty to screen for, or to refuse to rent because of, the criminal record of a prospective or current residential lessee, occupant, or guest. This statute does not prohibit a residential lessor or residential lessor's agent from using a criminal background check as grounds for refusing to rent to any prospective residential lessee or current lessee."
  **SECTION 2.2.** G.S. 42-25.7 reads as rewritten:
"**§ 42-25.7. Distress and distraint not permitted.**
  It is the public policy of the State of North Carolina that distress and distraint are prohibited and that landlords of residential rental property shall have rights concerning the personal property of their residential tenants only in accordance with G.S. 42-25.9(d), 42-25.9(g), 42-25.9(h), 42-36.2, 28A-25-2, or 28A-25-7."
  **SECTION 2.3.** G.S. 28A-25-1 reads as rewritten:
"**§ 28A-25-1. Collection of property by affidavit when decedent dies intestate.**
  (a)  When a decedent dies intestate leaving personal property, less liens and encumbrances thereon, not exceeding twenty thousand dollars ($20,000) in value, at any time after 30 days from the date of death, any person indebted to the decedent or having possession of tangible personal property or an instrument evidencing a debt, obligation, stock or chose in action belonging to the decedent shall make payment of the indebtedness or deliver the tangible personal property or an instrument evidencing a debt, obligation, stock or chose in action to a person claiming to be the public administrator appointed pursuant to G.S. 28A-12-1, or an heir or creditor of the decedent, not disqualified under G.S. 28A-4-2, upon being presented a certified copy of an affidavit filed in accordance with subsection (b) and made by or on behalf of the heir or creditor or the public administrator stating:
    (1) The name and address of the affiant and the fact that the affiant is the public administrator or an heir or creditor of the decedent;
    (2) The name of the decedent and the decedent's residence at time of death;
    (3) The date and place of death of the decedent;
    (4) That 30 days have elapsed since the death of the decedent;
    (5) That the value of all the personal property owned by the estate of the decedent, less liens and encumbrances thereon, does not exceed twenty thousand dollars ($20,000);
    (6) That no application or petition for appointment of a personal representative is pending or has been granted in any jurisdiction;
    (7) The names and addresses of those persons who are entitled, under the provisions of the Intestate Succession Act, to the personal property of the decedent and their relationship, if any, to the decedent; and
    (8) A description sufficient to identify each tract of real property owned by the decedent at the time of the decedent's death.
  In those cases in which the affiant is the surviving spouse and sole heir of the decedent, not disqualified under G.S. 28A-4-2, the property described in this subsection that may be collected

pursuant to this section may exceed twenty thousand dollars ($20,000) in value but shall not exceed thirty thousand dollars ($30,000) in value, after reduction for any spousal allowance paid to the surviving spouse pursuant to G.S. 30-15. In such cases, the affidavit shall state: (i) the name and address of the affiant and the fact that the affiant is the surviving spouse and is entitled, under the provisions of the Intestate Succession Act, to all of the property of the decedent; (ii) that the value of all of the personal property owned by the estate of the decedent, less liens and encumbrances thereon, does not exceed thirty thousand dollars ($30,000); and (iii) the information required under subdivisions (2), (3), (4), (6), and (8) of this subsection.

…

(d) <u>The public administrator or an heir that has presented an affidavit as provided in subsection (a) of this section shall be entitled to remove or otherwise dispose of the decedent's personal property located in the demised premises.</u>"

**SECTION 2.4.** G.S. 28A-25-1.1 reads as rewritten:
"**§ 28A-25-1.1. Collection of property by affidavit when decedent dies testate.**

(a) When a decedent dies testate leaving personal property, less liens and encumbrances thereon, not exceeding twenty thousand dollars ($20,000) in value, at any time after 30 days from the date of death, any person indebted to the decedent or having possession of tangible personal property or an instrument evidencing a debt, obligation, stock or chose in action belonging to the decedent shall make payment of the indebtedness or deliver the tangible personal property or an instrument evidencing a debt, obligation, stock or chose in action to a person claiming to be the public administrator appointed pursuant to G.S. 28A-12-1, a person named or designated as executor in the will, devisee, heir or creditor, of the decedent, not disqualified under G.S. 28A-4-2, upon being presented a certified copy of an affidavit filed in accordance with subsection (b) and made by or on behalf of the heir, the person named or designated as executor in the will of the decedent, the creditor, the public administrator, or the devisee, stating:

(1) The name and address of the affiant and the fact that the affiant is the public administrator, a person named or designated as executor in the will, devisee, heir or creditor, of the decedent;
(2) The name of the decedent and the decedent's residence at time of death;
(3) The date and place of death of the decedent;
(4) That 30 days have elapsed since the death of the decedent;
(5) That the decedent died testate leaving personal property, less liens and encumbrances thereon, not exceeding twenty thousand dollars ($20,000) in value;
(6) That the decedent's will has been admitted to probate in the court of the proper county and a duly certified copy of the will has been recorded in each county in which is located any real property owned by the decedent at the time of the decedent's death;
(7) That a certified copy of the decedent's will is attached to the affidavit;
(8) That no application or petition for appointment of a personal representative is pending or has been granted in any jurisdiction;
(9) The names and addresses of those persons who are entitled, under the provisions of the will, or if applicable, of the Intestate Succession Act, to the property of the decedent; and their relationship, if any, to the decedent; and
(10) A description sufficient to identify each tract of real property owned by the decedent at the time of the decedent's death.

In those cases in which the affiant is the surviving spouse, is entitled to all of the property of the decedent, and is not disqualified under G.S. 28A-4-2, the property described in this subsection that may be collected pursuant to this section may exceed twenty thousand dollars ($20,000) in value but shall not exceed thirty thousand dollars ($30,000) in value, after reduction for any spousal allowance paid to the surviving spouse pursuant to G.S. 30-15. In such cases, the

Case 1:20-cv-01049-WO-JLW   Document 51-2   Filed 12/28/21   Page 9 of 14

affidavit shall state: (i) the name and address of the affiant and the fact that the affiant is the surviving spouse and is entitled, under the provisions of the decedent's will, or if applicable, of the Intestate Succession Act, to all of the property of the decedent; (ii) that the decedent died testate leaving personal property, less liens and encumbrances thereon, not exceeding thirty thousand dollars ($30,000); and (iii) the information required under subdivisions (2), (3), (4), (6), (7), (8), and (10) of this subsection.

…

(d) The public administrator, person named or designated as executor in the will, devisee, or heir that has presented an affidavit as provided in subsection (a) of this section shall be entitled to remove or otherwise dispose of the decedent's personal property located in the demised premises."

**SECTION 2.5.** G.S. 28A-25-2 reads as rewritten:

"**§ 28A-25-2. Effect of affidavit.**

The person paying, delivering, transferring or issuing personal property or the evidence thereof pursuant to an affidavit meeting the requirements of G.S. 28A-25-1(a) or G.S. 28A-25-1.1(a) is discharged and released to the same extent as if the person dealt with a duly qualified personal representative of the decedent. A lessor or lessor's agent of the demised premises that, at the direction of an affiant authorized pursuant to G.S. 28A-25-1(d) or G.S. 28A-25-1.1(d), removes, throws away, or otherwise disposes of the personal property located in demised premises is discharged and released to the same extent as if the lessor dealt with a duly qualified personal representative of the decedent. The person or lessor is not required to see to the application of the personal property or evidence thereof or to inquire into the truth of any statement in the affidavit. If any person to whom an affidavit is delivered refuses to pay, deliver, transfer, or issue any personal property or evidence thereof, it may be recovered or its payment, delivery, transfer, or issuance compelled upon proof of their right in an action brought for that purpose by or on behalf of the persons entitled thereto. The court costs and attorney's fee incident to the action shall be taxed against the person whose refusal to comply with the provisions of G.S. 28A-25-1(a) or G.S. 28A-25-1.1(a) made the action necessary. The heir or creditor to whom payment, delivery, transfer or issuance is made is answerable and accountable therefor to any duly qualified personal representative or collector of the decedent's estate or to any other person having an interest in the estate."

**SECTION 2.6.** Sections 2.3, 2.4, and 2.5 are effective when they become law and apply to decedents dying on or after that date. The remainder of this Part is effective when it becomes law.

**PART III. EFFECTIVE DATE**

Case 1:20-cv-01049-WO-JLW   Document 51-2   Filed 12/28/21   Page 10 of 14

**SECTION 3.1.** Except as otherwise provided, this act is effective when it becomes law.

In the General Assembly read three times and ratified this the 23rd day of June, 2021.

                              s/ Phil Berger
                                  President Pro Tempore of the Senate

                              s/ Tim Moore
                                  Speaker of the House of Representatives

                              s/ Roy Cooper
                                Governor

Approved 11:59 a.m. this 2nd day of July, 2021

KeyCite Blue Flag – Appeal Notification
Appeal Filed by TIFFANY BASS v. WEINSTEIN MANAGEMENT CO., INC., 4th Cir., October 6, 2021

2021 WL 4078507
Only the Westlaw citation is currently available.
United States District Court, M.D. North Carolina.

Tiffany BASS and Paula Wiggins, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
WEINSTEIN MANAGEMENT CO., INC. and WMCi Charlotte XIII, LLC d/b/a Bexley Village at Concord Mills, Defendants.

1:20-CV-916
|
Signed 09/08/2021

**Attorneys and Law Firms**

Edward H. Maginnis, Karl S. Gwaltney, **Maginnis Howard,** Patrick M. Wallace, Scott C. Harris, Milberg Coleman Bryson Phillips Grossman, PLLC, Raleigh, NC, for Plaintiffs.

Matthew F. Tilley, Michael A. Ingersoll, Mark P. Henriques, Womble Bond Dickinson (US), LLP, Charlotte, NC, for Defendants.

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

*1 By statute, North Carolina regulates the fees and expenses a landlord can charge a residential tenant who falls behind on rent, allowing some and prohibiting others. This case concerns whether tenants can recover damages from landlords who charged them eviction-related expenses that at the time were not authorized by statute when the General Assembly thereafter amended the statute to authorize landlords to charge those expenses and explicitly made the amendments retroactive. The defendants' motion for judgment on the pleadings will be granted.

**1. BACKGROUND AND FACTS**
The expenses at issue here are the filing fee a landlord must pay the court to initiate a summary ejectment proceeding, the fee the landlord must pay the sheriff to serve the summary ejectment complaint on the tenant, and the attorney's fee the landlord pays to counsel it retains to handle the summary ejectment proceeding. The Court will refer to the filing fee and service fee as "summary ejectment expenses" and the attorney's fee as such.

According to the complaint, on June 13, 2018, the defendants here assessed summary ejectment expenses and attorney's fees against the plaintiffs, who had fallen behind on their rent. Doc. 18 at ¶ 51; Doc. 18-7 at 2. Though this was allowed under the lease, Doc. 48-2 at 3, the statute did not authorize landlords to impose the summary ejectment expenses. *See, e.g., Suarez v. Camden Prop. Tr.*, 818 F. App'x 204, 211–12 (4th Cir. 2020) (persuasively finding that under the pre-2018 amendment version of § 42-46, the landlord "was not authorized to charge" the tenant the filing fee or the service fee, and that a reasonable attorney's fee could be assessed only if authorized by a separate provision of North Carolina law, such as N.C. Gen. Stat. § 6-21.2).[1]

The next day, the General Assembly passed a law amending § 42-46, effective June 25, 2018, to add a subsection explicitly authorizing landlords to charge tenants for summary ejectment expenses and a reasonable attorney's fee. N.C. Gen. Stat. § 42-46(i) (2018).[2] But these changes were not retroactive. *See, e.g., Suarez.*, 818 F. App'x at 210.

In 2021, several months after this lawsuit was filed in 2020, the legislature again amended § 42-46. In this amendment, the General Assembly added language characterizing the authorized eviction expenses and attorney's fee as "administrative fees" and stating explicitly that "[t]his Part is effective when it becomes law and is intended to apply retroactively to all pending controversies as of that date." Doc. 48-1 at 3–4; 2021 N.C. Sess. Laws 2021-71 (S.B. 644) § 1.2.

**2. DISCUSSION**
*2 At the time they charged the plaintiffs for eviction fees, the defendants did not have statutory authority to do so under the then-applicable version of § 42-46. The question is whether the General Assembly's action in 2021 did away with the plaintiffs' causes of action. The plaintiffs say that

EXHIBIT B

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:20-cv-01049-WO-JLW   Document 51-2   Filed 12/28/21   Page 12 of 14

retroactive application of the 2018 and 2021 amendments to their claims would interfere with their vested rights and would be unconstitutional. The defendants say that the legislature can take away a statutory cause of action any time before final judgment.[3]

In *Dyer v. Ellington*, the plaintiff sued the town commissioners for failing to publicly disclose the amount of taxes collected and spent during the year, as required by statute. 126 N.C. 941, 36 S.E. 177 (1900). The plaintiff sued to recover a penalty from the commissioners for this failure, as authorized in the statute. While the case was pending, the legislature passed a law releasing the commissioners from any penalties for not complying with the statute. The North Carolina Supreme Court held that the plaintiff's cause of action was "destroyed" before he obtained a vested right and that the case should be dismissed. *Id.* at 941, 36 S.E. at 178; *accord In re Incorporation of Indian Hills, Jackson Cnty.*, 280 N.C. 659, 663, 186 S.E.2d 909, 911 (1972) ("[I]f a statute is unconditionally repealed without a saving clause in favor of pending suits, all pending proceedings thereunder are terminated, and if final relief has not been granted before the repeal goes into effect, it may not afterwards.").

This case is the same. Just as in *Dyer*, the cause of action was created by statute and the remedy was created by statute. Just as in *Dyer*, the plaintiffs filed suit before the statute was amended but had not obtained a judgment. On these facts, *Dyer* controls and the plaintiffs' claims must be dismissed.

The plaintiffs rely on *Osborn v. Leach*, 135 N.C. 628, 47 S.E. 811 (1904), and its progeny. As explained in a later Supreme Court case:

> In *Osborn v. Leach*, 135 N.C. 628, 47 S.E. 811 (1904), the question was whether our "London Libel Law," now codified as General Statutes 99-1 and 99-2, violated the "open courts" provision of our Constitution. G.S. 99-1 to -2 (1979). This law abolished the right of a libeled plaintiff to recover punitive damages from "a newspaper or periodical" if these entities published a timely retraction and if the libel was published in good faith. The Court in *Osborn* concluded that the legislature could constitutionally abolish the common law right to recover punitive damages under these circumstances. The court stressed, however, the proposition that the statute still permitted the recovery of "actual damages." It interpreted these damages to be all ordinary, compensatory damages, including actual pecuniary loss, damages for pain, mental suffering, inconvenience, and for injury to reputation. The Court, in dictum, stated that had the legislation abolished plaintiff's right to recover these kinds of compensatory damages it would have considered the act in violation of the "open courts" provision. *Id.* at 639–40, 47 S.E. at 815.

*Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 443, 302 S.E.2d 868, 882 (1983).[4] Since *Osborn*, the Supreme Court has twice acknowledged that the statement about the unconstitutionality of abolishing a plaintiff's right to recover compensatory damages was dicta, *id.; Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 604, 853 S.E.2d 698, 731 (2021), and in any event, this case concerns statutory rights, not common law rights.

*3 The plaintiffs also contend that their rights in their cause of action were vested. It is undisputed that no matter how clear the legislature's intent as to retroactivity, a statute cannot be given retroactive application if to do so would violate constitutional rights. *See e.g., Fogleman v. D & J Equip. Rental, Inc.*, 111 N.C. App. 228, 233, 431 S.E.2d 849, 852 (1993) (refusing retroactive application of an amended statute where it "deprived appellants of vested rights and, thus, was unconstitutionally retroactive"). " 'Vested' rights may not be retroactively impaired by statute." *Gardner v. Gardner*, 300 N.C. 715, 719, 268 S.E.2d 468, 471 (1980). But that exception does not apply here.

Unless judgment has already been entered, *see, e.g., Dunham v. Anders*, 128 NC 207, 38 S.E. 832 (1901), "generally speaking, a right created solely by the statute may be taken away by its repeal or by new legislation." *Pinkham v. Unborn Child. of Jather Pinkham*, 227 N.C. 72, 78, 40 S.E.2d 690, 694 (1946). As the court in *Pinkham* acknowledged, there is an exception if the statutory rights may "be regarded as contractual." *Id.* But here the contract itself authorized the landlord to collect the eviction expenses and attorney's fees, so the contract is consistent with the 2021 amendment.

The Court appreciates the policy reasons leading courts to apply a presumption against retroactive application of legislation. *See, e.g., McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 955, 958 (4th Cir. 2020); *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 176 (4th Cir. 2010). They are sound. But there is no absolute prohibition on retroactivity, and, as the court in *McKiver* recognized, statutes must be given retroactive construction when "the words used are so clear, strong and imperative that no other meaning can be annexed to them." *McKiver*, 980 F.3d at 955 (cleaned up). That is the case here.

Case 1:20-cv-01049-WO-JLW Document 51-2 Filed 12/28/21 Page 13 of 14

The defendants' motion for judgment on the pleadings will be granted.

It is **ORDERED** that:

1. The defendants' motion for judgment on the pleadings, Doc. 47, is **GRANTED**.

2. The defendants' motion to stay proceedings, Doc. 49, and the plaintiffs' motion to compel, Doc. 44, are **DENIED** as moot.

3. Judgment will be entered separately.

**All Citations**

Slip Copy, 2021 WL 4078507

Footnotes

1  *Suarez* is an unpublished opinion and thus not binding precedent, but its reasoning is persuasive.
2  The bill added subsection (i), entitled "Out-of-Pocket Expenses," which provided:
   [i]n addition to the late fees ... and the administrative fees ..., a landlord is also permitted to charge and recover from a tenant the following actual out-of-pocket expenses:
   (1) Filing fees charged by the court.
   (2) Costs for service of process pursuant to G.S. 1A-1, Rule 4 of the North Carolina Rules of Civil Procedure and G.S. 42-29.
   (3) Reasonable attorneys' fees actually incurred, pursuant to a written lease, not to exceed fifteen percent (15%) of the amount owed by the tenant, or fifteen percent (15%) of the monthly rent stated in the lease if the eviction is based on a default other than the nonpayment of rent.
3  The plaintiffs have two pending claims: one for assessing fees in violation of § 42-46, Doc. 18 at ¶¶ 79–84, and another for violation of the North Carolina Debt Collection Act. Doc. 18 ¶¶ 85–104. The Debt Collection Act claim is based on the statutory violation of § 42-46, and the parties have not distinguished between these two claims for purposes of the pending motion.
4  The Court in *Lamb*, which upheld a six-year statute of repose as constitutional, said that "we do not have to decide whether the legislature could constitutionally abolish all tort claims against builders and designers arising out of improvements they built or designed. We refrain from holding ... that the legislature may constitutionally abolish altogether a common law cause of action. Neither do we mean to say that it cannot. The question is not before us." *Id.* at 443–44, 302 S.E.2d at 882.

**End of Document**　　　© 2021 Thomson Reuters. No claim to original U.S. Government Works.